**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JULIA KELLER and SCOTT KELLER, her husband,<br><br>    *Plaintiffs,*<br><br>  v.<br><br>MID-CENTURY INSURANCE COMPANY d/b/a FARMERS INSURANCE GROUP<br><br>    *Defendant*. | ____:____-cv-_____<br><br>Judge: _____<br><br>Jury Trial:  ☑Yes   ☐No |

## COMPLAINT FOR A CIVIL CASE

AND NOW, come the Plaintiffs, JULIA KELLER and SCOTT KELLER, her husband, by and through their attorneys, Caroselli Beachler & Coleman, LLC and Kelly Enders, Esquire, and hereby file the following Complaint:

## PARTIES

1. Plaintiffs, Julia Keller ("Plaintiff-wife") and Scott Keller ("Plaintiff-husband"), are adult individuals who reside at 111 Sherrick Street, Everson, Fayette County, Pennsylvania 15631.

2. Defendant Mid-Century Insurance Company d/b/a Farmers Insurance Group ("Farmers") is an insurance company which provides personal and automobile liability insurance and is licensed to do business in Pennsylvania and incorporated in California with its headquarters at 6301 Owensmouth Avenue, Woodland Hills, California 91367.

**JURISDICTION AND VENUE**

3. This Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. Venue is proper in this District Court based on the language of the Farmers policy which provides that any action relating to coverage under the policy's uninsured/underinsured motorist coverage must be brought either in the county in which the insured resides, Fayette County, or the United States District Court serving that county.

**FACTUAL BACKGROUND**

**Insurance Coverage**

5. At all relevant times, there existed, in full force and effect, a Pennsylvania automobile insurance policy (No. 19355-27-11) issued by Defendant Farmers to Plaintiffs Julia Keller and Scott Keller as the named insureds, providing coverage in accordance with the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. C.S.A. §1701 et seq. ("Kellers' Policy").  True and correct copies of the Declaration Page and Farmers' Policy as supplied by the Defendant are attached as Exhibit A.

6. The Kellers' Policy was issued, executed and delivered to the Plaintiffs in Pennsylvania.

7. The Kellers' Policy issued by Defendant Farmers to Plaintiffs provided stacked underinsured motorist coverage for three vehicle of $300,000.

### Accident

8. On October 6, 2015 at about 7:23 p.m., Plaintiff Julia Keller was driving her Hyundai Elantra north on South Dixie Highway and was stopped at a red light at the intersection of South Dixie Highway and Bunker Ranch Road in West Palm Beach, Florida.

9. At or about the same time and place, when the light turned green Plaintiff-wife took her foot of the brake to proceed northbound when her vehicle was struck from behind by a vehicle operated by Elizabeth Aparicio.

10. The sudden and forceful impact caused Plaintiff-wife's body and head to be violently jarred forward.

11. Elizabeth Aparicio's negligent and careless operation of her vehicle caused it to strike Plaintiff-wife's vehicle, causing Plaintiff-wife to suffered serious injuries to her neck and low back which resulted in multiple surgeries, scarring and permanent injuries.

### Medical Treatment

12. Before the accident of October 6, 2015, Plaintiff-wife was not suffering from neck and/or back pain, she was not treating for neck and/or back pain, nor had she ever been diagnosed with any chronic neck and/or back conditions.

13. At the time of the subject accident Plaintiff-wife was in Florida undergoing therapeutic treatment for a medical disease unrelated to the injuries she sustained in this accident as such the medical treatment she received related to the subject accident over the next ten (10) months was primarily provided by medical providers within the state of Florida.

14. Following the accident of October 6, 2015, Plaintiff-wife was transported by ambulance to Good Samaritan Medical Center in West Palm Beach, Florida where she was treated for neck and back pain.

15. Due to continuing neck and back pain which included symptoms of numbness, tingling, and burning pain in her left hand and numbness, tingling, and burning pain down the right and left lower extremities with the left being worse than the right, Plaintiff-wife was seen by orthopedic Thomas Roush, MD in West Palm Beach, Florida on November 4, 2015.

16. Dr. Roush prescribed physical therapy for Plaintiff-wife and ordered diagnostic studies, a cervical and a lumbar MRI.

17. The MRIs, conducted on December 9, 2015, showed cervical disc disruption at C6-7 and lumbar disc disruption at L4-5 and L5-S1.

18. A conservative course of physical therapy was followed as well as treatment with cervical and lumbar epidural steroid injections without significant improvement in Plaintiff-wife's neck pain, back pain and radiating pain.

19. On April 26, 2016, Plaintiff-wife underwent a laminotomy, an orthopedic neurosurgical procedure that removes part of the lamina of a vertebral arch in order to relieve pressure in the vertebral canal, with a mircrodiscectomy, the removal of portions of the herniated disc to relieve pressure on the spinal nerve column, at L4-5 and L5-S1.

20. The April 2016 lumbar spine surgery helped lessen Plaintiff-wife's radiating pain down her lower extremities but she continued to experience intermittent numbness in her right heel and lower back pain.

21. On June 28, 2016, Plaintiff-wife underwent an anterior cervical discectomy, decompression and insertion of Pro-Disc-C total disk arthroplasty C6-7.  A surgery to remove a herniated disc in the neck with an incision made in the throat area to reach and remove the herniated disc and replace it with a ProDisc-C Total Disc, a device inserted into the disc space to restore the height at that level of her spine, while potentially allowing some motion.

22.  Plaintiff returned to Pennsylvania following the back and neck surgeries and continued treatment with her primary care physician who noted on September 9, 2016 that Plaintiff-wife was continuing to have back pain and spasms. She was referred to a specialist.

23.  On December 15, 2016, Plaintiff-wife was seen by neurosurgeon Michael Rutigliano, MD, who noted continued low back pain with left-sided radicular pain and progressive left leg weakness. He advised her to follow up with a neurologist.

24.  On March 30, 2017, Plaintiff-wife was seen by the Neurology Clinic at Rudy Memorial Hospital with complaints of back pain and left leg weakness. She was referred to physical therapy and given a prescription for an EMG diagnostic study.

25.  The EMG performed on April 4, 2017 was abnormal and showed active denervation changes in the left lower lumbo-sacral muscles.

26.  Plaintiff-wife returned to the Neurology Clinic at Rudy Memorial Hospital on July 27, 2017 and continued to report back pain.

27.  On June 19, 2018, Plaintiff-wife was seen by DNA Advanced Pain Treatment Center and diagnosed with lumber radiculopathy. Epidural steroid injections were ordered.

28.  On July 11, 2018, Plaintiff-wife was seen at the Neurology Clinic with complaints of lower back pain and burning on outer aspect of her left foot.

29.  Plaintiff-wife continues to have neck and back pain for which she continues to receive treatment.

30.  As a result of the collision set forth herein, Plaintiff Julia Keller suffered the following injuries and damages:

    a.    Injuries to head, neck, low back, headache and nausea;

    b.    numbness, tingling and burning pain in the left hand along with numbness tingling and burning pain down the right and left lower

extremities with the left leg being worse than right. Pain is described as constant dull aching pain with intermittent stabbing pain around the base of neck and low back. Decreased sensation over the left outer upper arm and down the right and left posterolateral thighs, otherwise intake to pinprick and light touch;

c. Cervical spine tenderness and palpable muscle spasms, tender C3 to C7;

d. Lumbar spine tender to palpation with palpable muscle spasm present, tender at midline from L3 to S1;

e. Blunt trauma, closed head injury;

f. MRI Lumbar Spine imaging revealed L4-5 posterior disc bulge impinging upon the thecal sac and L5-S1 posterior disc bulge;

g. Lumbar disk disruption, L4-5 and L5-S1 with bilateral lumbar radicular syndrome requiring a laminotomy with microdiscectomy at the L4-5 bilaterally and a laminotomy with microdiscectomy at the L5-S1 bilaterally;

h. Nerve roots at the L4, L5 and S1 levels bilaterally were visualized during surgery and found that the ventral medial aspect of the L5 and S1 nerve roots bilaterally had erythematous changes; the L5 and S1 never roots had a full–thickness annular tearing centrally with the nuclear material embedded within the posterior annulus. The largest of the annular tears was extended and multiple fragments of nuclear material were retrieved within the posterior annular tear at the L4-5 and L5-S1 level. No residual compression remained after removal of loose fragments;

i. MRI Cervical Spine imaging revealed C5-6 posterior disc protrusion impinging upon the ventral thecal sac; C6-7 posterior disc protrusion impinging upon the ventral thecal sac; and C7-T1 posterior disc bulge;

j. Cervical disc disruption at C6-7 with bilateral cervical radicular component requiring anterior cervical discectomy, decompression and insertion of Prodisc-C total disc arthroplasty at C6-7;

k. Permanent bodily injury and past, present, and future pain and suffering;

l. Past, present, and future disability or physical impairment;

      m.     Past, present, and future scarring and disfigurement;

      n.     Past, present, and future mental anguish;

      o.     Past, present, and future inconvenience;

      p.     Past, present, and future loss of capacity for enjoyment of life;

      q.     Past, present, and future medical expenses; and

      r.     Past, present, and future lost earnings and loss of earning capacity.

31.    As a direct and proximate result of the aforesaid incident and injuries to Plaintiff-wife, Julia Keller, Plaintiff-husband, Scott Keller, has suffered and will continue to suffer the following damages:

      a.     He has lost the value of services, contribution, and support which his wife would have rendered had she not been injured;

      b.     He has suffered and may continue to suffer a loss of consortium;

      c.     He has and may continue to be obligated to spend various sums of money in an effort to restore his wife's health; and,

      d.     He has and may continue to suffer an interruption of marital and family relationships.

## Medical Expenses

32.    Defendant Farmers paid $5,000.00 to various medical providers on behalf of their insured, Plaintiff Julia Keller, for related medical bills which exhausted the applicable first party medical benefits.

33.    Plaintiff-wife was at the time of the accident and continues to present day to be insured under the National Railway Carriers and United Transportation Union (NRC/UTU) Health & Welfare Plan ("NRC/UTU Health & Welfare Plan") for health insurance, a self-funded ERISA based plan administered by Highmark Blue Shield ("Highmark").

34. Plaintiff Julia Keller's medical bills related to the accident were submitted to Highmark for processing and payment.

35. Pursuant to the language of NRC/UTU Health & Welfare Plan, the Plan has a subrogation interest in the amount of medical bills paid on behalf of the Plaintiff Julia Keller.

36. Pursuant to the language of the NRC/UTU Health & Welfare Plan, the out-of-network Florida medical providers, that rendered medical services to Plaintiff Julia Keller related to the subject collision, were permitted to accept partial payment from the Plan and bill the patient, Plaintiff Julia Keller, the remaining balance.

37. Florida medical providers are not required to adjust the charges for their services rendered under the cost containment provisions found in the MVFRL at 75 Pa. C.S. §1797 (commonly referred to as Act 6) as Commonwealth of Pennsylvania medical providers are required to do for services rendered for injuries sustained in motor vehicle collisions.

38. After the exhaustion of Plaintiff Julia Keller's first party medical benefits and all subsequent bills that were processed and in part paid by Highmark, Plaintiff Julia Keller's patient responsibility of the remaining unpaid medical expenses owed to medical providers in this matter is equal to or exceeds Farmers' underinsured motorist coverage policy limits.

## Tort Action

39. At the time of the accident on October 6, 2015, there existed an automobile insurance policy issued by State Farm Mutual Automobile Insurance ("State Farm") providing coverage to Elizabeth Aparicio.

40. The policy of insurance issued by State Farm covering Elizabeth Aparicio provided $10,000 in liability coverage.

41. Following the accident, the Plaintiffs made a claim upon Elizabeth Aparicio and State Farm for recovery of damages in tort.

42. The liability coverage available to Elizabeth Aparicio for her negligence and carelessness in the operation of her vehicle was insufficient to compensate the Plaintiffs for Plaintiff Julia Keller's serious injuries and damages sustained in the accident of October 6, 2015.

43. Defendant Farmers granted permission to the Plaintiff Julia Keller to accept State Farm's tender of the liability policy limits and agreed to waive its right of subrogation against Ms. Aparicio.

## Underinsured Motorist Claim

44. Plaintiffs have made a claim upon Defendant Farmers for recovery of underinsured motorist benefits under their Policy.

45. Plaintiffs and Defendant Farmers have not be able to reach an amicable resolution of the underinsured motorist claim.

46. Plaintiffs initially demanded Farmers' underinsured motorist policy limits of $300,000.00 to settle this matter.

47. Settlement negotiations between Plaintiffs and Farmers representatives have proven unsuccessful.

48. Farmers has responded to Plaintiffs' demand to settle with offers that will not afford the Plaintiffs the ability to pay the outstanding medical bills that are owed in this matter.

49. Plaintiffs have demanded payment of underinsured motorist benefits under the terms and conditions set forth in the Kellers' Policy but Defendant Farmers has failed to pay the same, breaching the insurance contract between Plaintiffs and Defendant.

## COUNT I

## BREACH OF CONTRACT

50. Plaintiffs incorporate by reference the allegations contained in the above paragraphs.

51. The insurance contract at issue constitutes a valid contract between Plaintiffs and Defendant Farmers.

52. The Plaintiffs, at all relevant times to this cause of action, fully and completely cooperated with Defendant Farmers and fulfilled all of their obligations under the insurance policy.

53. At the time of the accident, the vehicle being operated by the Elizabeth Aparicio, was underinsured and did not provide adequate coverage for the claims and damages suffered by the Plaintiffs.

54. At the time of the accident, the Plaintiffs had in force a policy of automobile insurance issued by Defendant Farmers. Said policy of insurance contained a provision for uninsured/underinsured motorist coverage which provided, among other things, insurance coverage for losses and damages sustained in accidents which were caused by the negligent operation of a vehicle by third persons, when that vehicle is uninsured or underinsured at the time of the accident, and the third person is not otherwise entitled to coverage.

55. The Plaintiffs have complied with the terms of the insurance contract with the Defendant Farmers and are entitled to be paid by the Defendant any and all damages sustained by the Plaintiffs resulting from the negligence of the underlying tortfeasor, Elizabeth Aparicio.

56. The Defendant Farmers has breached its contract with the Plaintiffs by failing to make any offers or payments to the Plaintiffs under the underinsured motorist provision of the

Kellers' Policy that will compensate them and allow them to pay the outstanding medical bills owed.

57. The Defendant Farmers failed to objectively and fairly evaluate Plaintiffs' claim.

58. The Defendant Farmers has failed to reasonably investigate the Plaintiffs' claim inasmuch as a thorough and proper inquiry would reveal that Plaintiff-wife sustained serious injuries to her neck and back which resulted in substantial medical expenses.

59. The Defendant Farmers owes a fiduciary, contractual and statutory obligation to investigate, evaluate, and negotiate Plaintiffs' underinsured motorist claim in good faith and arrive at a prompt, fair and equitable settlement.

**JURY TRIAL DEMANDED.**

WHEREFORE, Plaintiffs hereby demand judgment against Defendant in an amount in excess of $75,000.00, plus additional compensatory and/or consequential damages that this Court may deem proper.

Respectfully Submitted,

Dated: February 18, 2020    By: / s / Kelly L. Enders
Kelly L. Enders, Esquire
Pa. I.D. # 82506
E-Mail: kenders@cbmclaw.com

**CAROSELLI BEACHLER & COLEMAN, LLC**

20 Stanwix Street, Suite 700
Pittsburgh, PA 15222-4802

(412) 391-9860 (Phone)
(412) 391-7453 (Fax)